Argued and submitted May 18, affirmed December 19, 1984

# CALIFORNIA CASUALTY INSURANCE COMPANY,
## *Appellant,*

*v.*

# DAVID DOUGLAS SCHOOL DISTRICT et al,
## *Respondents.*

## (A8012-07083; CA A28753)

693 P2d 54

G. Kenneth Shiroishi, Portland, and Jack D. Hoffman, Portland, argued the cause for appellant. With them on the briefs were Morrison, Dunn, Carney, Allen & Tongue, Portland.

Susan E. Watts, Portland, argued the cause for respondents. With her on the brief were Dressler and Granata, and Kennedy, King, Zimmer & O'Malley, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

**NEWMAN, J.**

Plaintiff California Casualty Insurance Company appeals a judgment for defendants David Douglas School District and its business auto liability insurer, St. Paul Fire and Marine Insurance Company. A district administrator, Salvo, obtained a $50,000 personal automobile policy from plaintiff. Subsequently, an injured pedestrian sued the district and Salvo for negligent operation of *Salvo's own* car on travel that the district had "authorized." The claim was settled for $84,000, of which plaintiff paid $50,000 with a reservation of rights and St. Paul paid $34,000.

Plaintiff, as subrogee of Salvo's rights, sued defendants to recover $50,000, plus defense costs. It argued that, under ORS 30.285, the district and St. Paul must indemnify Salvo and, therefore, plaintiff. Alternatively, it argued that St. Paul must contribute *pro rata* to the total settlement. The court held that Salvo was not acting within the scope of his employment at the time of the accident and that the district had no liability and denied plaintiff relief. Although we find that, as a matter of law, Salvo was acting within the scope of his employment, the judgment nonetheless was correct, and we affirm.

Because Salvo was acting within the scope of his employment, plaintiff's policy not only insured Salvo but also the district as an "other person or organization but only with respect to his or its liability because of acts or omissions of an insured [Salvo] * * *."[1] St. Paul's policy (the only policy of the district in evidence) also insured the district, but only for

---

[1] Plaintiff's policy defines "insured":

"A person or organization described under 'Persons Insured.'"

The policy defines "Persons Insured":

"The following are insured under Part I [for bodily injury and property damage liability]

"(a) with respect to the owned automobile

"(1) the named insured and any resident of the same household

"(2) any other person using such automobile with the permission of the named insured, provided his actual operation or if he is not operating, his other actual use thereof, is within the scope of such permission, and

"(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (1) or (2) above."

liability arising from operation of *its owned* vehicles, permissive drivers of those vehicles and superiors responsible for permissive drivers of those vehicles. St. Paul's policy by its terms did *not* insure the district against liability for Salvo's acts when he drove his *own* car, even if he was then within the scope of his employment.

Endorsement 19 to St. Paul's policy provides "Employee contingent automobile liability Insurance." It covered Salvo as well as other district administrators only with respect to the use of an automobile for travel that the district authorized. It expressly provided only excess coverage above $50,000[2] for Salvo when he used his own car on "authorized travel." Endorsement 19 does *not* by its terms insure the district.

■ The school district has a duty to indemnify Salvo for his acts "occurring in the performance of duty." ORS 30.285. Plaintiff contends that it is entitled as Salvo's subrogee to indemnity of $50,000 from the district. Plaintiff, however, insured the *district* against its responsibility for the acts of Salvo to the extent of $50,000. Although Salvo's acts occurred "in the performance of duty," plaintiff may not recover indemnity from the district, because plaintiff insured the district against those acts. Furthermore, plaintiff, as Salvo's subrogee, cannot recover from St. Paul for the district's indemnity responsibility because St. Paul did *not* insure the district against it.

■ Plaintiff argues alternatively that St. Paul must

---

[2] Endorsement 19 provides:

"[N]o insurance is afforded to such employee to the extent that the employee has other valid and collectible insurance, but in no event less than the minimum required limits stated below, and this policy shall afford protection only for the difference between the limits of such other insurance, or minimum required limits, and limits of this policy.

"* * * * *

"Schedule of minimum required limits:

| "Bodily injury | $ 50,000.00 each person |
| | 100,000.00 each occurrence |
| "Property damage | $ 5,000.00 each occurrence |

OR

"100,000.00 combined single limits bodily injury and property damage."

contribute *pro rata* to the total settlement, relying on *Lamb-Weston et al v. Ore. Auto. Ins. Co.,* 219 Or 110, 341 P2d 110, 346 P2d 643 (1959), which requires proration if there are conflicting or mutually repugnant insurance policies. Although plaintiff asserts and St. Paul concedes the applicability of *Lamb-Weston,* the parties are not correct.[3] St. Paul did not insure the district for Salvo's acts in this case. There are no conflicting or mutually repugnant insurance policies that insure the district.

■  Moreover, there are no conflicting or mutually repugnant insurance policies that insure Salvo. The "other insurance" provision of plaintiff's policy states:

> "If, at the time of an occurrence, any other valid and collectible insurance is available to an insured, whether on a primary, pro rata, excess or continuing basis, *except insurance purchased by an insured to expressly apply in excess of the limit of liability of this policy,* such insurance as may be afforded hereunder as respects such occurrence shall be excess over any other insurance available to the insured." (Emphasis supplied.)

Plaintiff's policy, by its terms, is primary when an "insured" has purchased a policy "to expressly apply in excess of the limit of liability of [plaintiff's policy]" and, in such event, is not in conflict with or repugnant to Endorsement 19 of St. Paul's policy, which expressly provides only excess coverage over $50,000.

Salvo and the district is each an "insured" under plaintiff's policy. We construe the term "insured" in the emphasized exception clause in the preceding paragraph to refer to the district and otherwise in the quoted provision to refer to Salvo. Although the district did not pay an additional charge to St. Paul for Endorsement 19, it did pay the premium for the St. Paul policy. It obtained Endorsement 19 to benefit administrators and "to expressly apply in excess of the limit of liability" of their personal liability policies. The coverage of Endorsement 19 begins above $50,000 and, after the district obtained it, Salvo increased his protection under plaintiff's

---

[3] In *Lamb-Weston,* each insurer acknowledged that it would be primarily liable in the absence of coverage by the other company. The court resolved the conflict between the insurers by allocating responsibility on a *pro rata* basis. *See United Pacific/ Reliance Ins. v. Horace Mann Ins.,* 65 Or App 21, 25, 670 P2d 172 (1983).

policy from $20,000 to $50,000 so that there would be no gap in his coverages.

Plaintiff's policy, therefore, by its terms, is not in conflict with or repugnant to Endorsement 19 of St. Paul's. Accordingly, as to Salvo's liability, plaintiff is his primary insurer and St. Paul is his excess insurer. Plaintiff paid its policy limit of $50,000 on the liability of Salvo and the vicarious liability of the district. St. Paul paid $34,000 for Salvo's liability above $50,000. That is as it should be and is the monetary result of the judgment below.

Affirmed.